UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>STEPHEN JONES | No. 3:18-cr-81(SRU) |

### ORDER

On January 29, 2019 Stephen Jones pled guilty to one count of a superseding indictment charging him with conspiracy to possess and distribute heroin and cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B)(i) and (ii). *See* Judgment, Doc. No. 754. On July 9, 2019, I sentenced him to 60 months' incarceration and a four-year term of supervised release, the mandatory minimum sentence for those charges. *Id.*; *see also* Trans. of Sentencing H'rg. Doc. No. 849. Jones is currently incarcerated at Federal Correctional Institution Fort Dix in New Jersey.

On January 23, 2021, Jones, through counsel, filed a motion for sentence reduction to time served under 18 U.S.C. § 3582(c)(1)(A)(i), as amended in 2018 by the First Step Act. Jones contends that his underlying medical conditions, coupled with the increased risk he faces of contracting Covid-19 while incarcerated at Fort Dix, constitute extraordinary and compelling reasons supporting release. He additionally argues that his family circumstances, including the difficulty his partner faces of balancing work and childcare during the pandemic, weigh in favor of release. Finally, Jones points to his rehabilitation while incarcerated to support his contention that release is consistent with the sentencing goals enumerated in 18 U.S.C. § 3553(a).

The government concedes that Jones's underlying medical conditions constitute extraordinary and compelling reasons supporting sentence modification. However, the

1

government argues that Jones has not established that he is at greater risk of contracting Covid-19 while incarcerated at Fort Dix and has alleged no facts to support the claim that the Bureau of Prisons ("BOP") has not properly managed the outbreak of Covid-19. The government additionally argues that the BOP is in the best position to make determinations regarding sentence reduction and modification and to appropriately balance public safety with the needs of each individual inmate. Accordingly, the government argues that the BOP's initial denial of Jones's motion for release should be afforded deference. However, the government notes that after consideration of the section 3553(a) factors, it does not have serious concerns with regard to recidivism or public safety. The government instead requests that prior to granting Jones's motion, I require him to submit a more comprehensive release plan, and additionally impose the previously ordered four-year term of supervised release.

For the following reasons, Jones's motion for release is **granted.**

I.     **Background**

The multi-defendant indictment in this case followed a years-long investigation by the Drug Enforcement Agency ("DEA") into suspected heroin and cocaine distribution by Duane Filyaw and numerous associates. *See* PSR, Doc. No. 734 at ¶ 9. Based on calls intercepted between Jones and Filyaw, Jones was accused of assisting Filyaw with the day-to-day operation of the drug distribution organization and of personally selling small quantities of heroin. *Id*. at ¶ 12. Jones ultimately pled guilty to conspiracy to possess and distribute heroin and cocaine (but maintained that he never personally sold drugs). *Id.; see also* Judgment, Doc. No. 754. However, he conceded that his actions in assisting Filyaw were sufficient to make him guilty of the conspiracy. *Id.*

Jones, who grew up in and around New Haven, has struggled with substance abuse since his teenage years. *Id.* at ¶¶ 42-51. Although the case at bar was his first federal conviction, he has multiple criminal convictions in Connecticut Superior Court, the majority of which involved possession of narcotics or marijuana. *Id.* at ¶¶ 31-35. Jones was additionally convicted of one count of robbery at the age of seventeen and served three years at a state correctional facility for that charge. *Id.* at ¶ 31.

Jones has one child with partner Nicole Service, a son, and has also helped raised Service's two children from a previous relationship. *Id.* at ¶¶ 47-48. Prior to sentencing in this case, Jones worked most recently as a baker at Dunkin Donuts. *Id.* at ¶¶ 56-57.

## II.    Standard of Review

Until 2018, the statute authorizing motions for sentence reduction (or "compassionate release") vested the exclusive authority to bring a motion with the director of the Bureau of Prisons ("BOP"), based upon a showing of "extraordinary and compelling reasons" warranting relief. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The statute did not specifically define the phrase "extraordinary and compelling"; instead, under 28 U.S.C. § 994(t), the Sentencing Commission was tasked with describing "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Commission ultimately did so in Guideline Section 1B1.13, which provides in part that "upon motion of the Director of the Bureau of Prisons," a court may reduce a sentence under Section 3582 if "extraordinary and compelling reasons warrant the reduction" and "the defendant is not a danger to the safety...of the community." U.S.S.G. § 1B1.13(2).

Although section 1B1.13 does not specifically define the phrase "extraordinary and compelling reasons," application notes (1)(A)-(D) to that section provide in part that

extraordinary and compelling reasons warranting relief may exist where a defendant is "suffering from a serious physical or medical condition." *Id.* at n.1(A)(ii)(I). Finally, application note 1(D) includes a catch-all provision providing for release where the Director of the BOP determines "there exists an extraordinary and compelling reason other than" the reasons enumerated. *Id.* Despite the broad discretion afforded to the BOP to define what constitutes extraordinary and compelling reasons for sentence reduction, the BOP has used its power to bring motions under section 3582 very sparingly. *See* U.S. Dep't of Just. Office of the Inspector General, The Federal Bureau of Prisons' Compassionate Release Program 1 (2013), https://www.oversight.gov/sites/default/files/oig-reports/e1306.pdf (finding that on average, only 24 incarcerated people per year were released on motion of the BOP).

In 2018, Congress moved to expand the use of motions for compassionate release by passing the First Step Act ("FSA"), which amended Section 3582 to allow defendants to file motions for sentence reduction directly, following the exhaustion of "administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." *United States v. Brooker*, 976 F.3d 228, 233 (2d Cir. 2020); 18 U.S.C. § 3582(c)(1)(A)(i).

Despite the significant changes made to the statutory scheme governing motions for sentence reduction, the Sentencing Commission has failed to update section 1B1.13 since the FSA was passed. *Brooker*, 976 F.3d 228 at 233. As a result, the language of section 1B1.13 and the associated application notes still define "extraordinary and compelling reasons for release" only in the context of motions brought by the BOP, and not by defendants directly. *Id.* That tension between the language of section 1B1.13 and the recently-enacted FSA left unclear the standard that a district court reviewing a motion brought directly by a defendant should apply.

*See United States v. Fox*, 2019 U.S. Dist. LEXIS 115388, at *4-5 (D. Me. July 11, 2019) (collecting cases). Some courts concluded that section 1B1.13's narrow definition of "extraordinary and compelling reasons" for relief remained binding even after passage of the FSA. *Id.* Others, however, concluded that a court reviewing a motion brought directly by a defendant had full discretion to determine what factors constituted "extraordinary and compelling" reasons for relief under section 3582. *Id.*

The Second Circuit addressed that division in *Brooker*, ultimately concluding that a district court considering a motion for compassionate release brought by a defendant is not bound by the definition of extraordinary and compelling reasons for reduction contained in section 1B1.13, and is instead free to "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Brooker*, 976 F.3d 228 at 237. "Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." *Id.*

The expanded discretion afforded to district courts considering motions for sentence reduction on motion of a defendant comes amidst the global Covid-19 pandemic, during which courts in this Circuit and around the country have granted motions for compassionate release where a defendant establishes that he or she suffers from an underlying condition that increases the risk of developing severe complications from a Covid-19 infection. *See, e.g., United States v. Colvin*, 451 F. Supp. 3d 237 (D. Conn. 2020). In determining whether a particular condition increases the risk of developing complications, courts have relied on guidelines published by the Centers for Disease Control and Protection ("CDC"). *See, e.g., United States v. Rojas*, 2020 U.S. Dist. LEXIS 238647, at *2 (S.D.N.Y. Dec. 18, 2020); *United States v. Vondette*, 2020 U.S. Dist. LEXIS 237750, at *6 (E.D.N.Y. Dec. 17, 2020). Courts have additionally recognized the high

risk of spread of Covid-19 in a prison environment, where inmates are forced to live in close quarters without the ability to social distance and often do not have access to hygienic products such as hand sanitizer. *See, e.g., United States v. Park*, 456 F. Supp. 3d 557, 560 (S.D.N.Y. 2020) ("the nature of prisons...puts those incarcerated inside a facility with an outbreak at heightened risk"); *see also* The Marshall Project, A State by State Look at Coronavirus in Federal Prisons, https://www.themarshallproject.org/2020/05/01/a-state-by-state-look-at-coronavirus-in-prisons#prisoner-deaths (noting that since the outbreak of the virus, there have been "at least 2,502 deaths from coronavirus reported among prisoners").

Despite the expanded discretion afforded to courts to determine where extraordinary and compelling reasons warrant sentence modification, however, a court reviewing a motion under section 3582 is still required to ensure that a modification would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a). *See also United States v. Madoff*, 465 F. Supp. 3d 343, 348 (S.D.N.Y. 2020). Accordingly, a court must consider the seriousness of the offense, the risk to the public from further crimes by a defendant and the need to adequately deter criminal conduct, among other factors. 18 U.S.C. § 3553(a)(2)(A)-(D). On motion for compassionate release, a defendant bears the burden of establishing that sentence reduction is warranted. *Madoff* at *11; *see also United States v. Morales*, 2020 U.S. Dist. LEXIS 151583, at *9 (D. Conn. Aug. 20, 2020).

### III. Discussion

#### A. Exhaustion

Under the FSA, a defendant may bring a motion for compassionate release only after exhausting all administrative rights to appeal a failure of the BOP to bring such a motion, or after the lapse of 30 days from the filing of such a motion with the warden of the defendant's facility.

18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Sturgis*, 2020 U.S. Dist. LEXIS 219102, at *9 (W.D.N.Y. Nov. 23, 2020).

Here, Jones submits exhibits establishing that he filed a motion for compassionate release with the warden of Fort Dix; that request was denied on the basis that further clarification was required. *See* Exhibit B. His attorney then submitted a supplemental request to the motion for compassionate release and indicates that the BOP has denied that request. *See* Def.'s Mem. Doc. No. 1178-1 at 7; Ex. A to Supp. Mem. Doc. No. 1197-1. The government concedes that on that record, Jones has satisfied the exhaustion requirement. *See* Govt.'s Mem. Doc. No. 1181 at 4. Accordingly, the exhaustion requirement has been satisfied. *See, e.g., United States v. Leigh-James*, 2020 U.S. Dist. LEXIS 124546, at *17-18 (D. Conn. July 15, 2020).

### B. Extraordinary and Compelling Reasons

Jones contends that his underlying conditions of obesity and asthma put him at risk of severe complications were he to contract Covid-19. He submits medical records establishing that he has suffered from asthma since childhood and relies on multiple inhalers to manage the condition. *See* Medical Records, Exhibit C; Def.'s Mem., Doc. No. 1178-1 at 8. He additionally reports that he has a BMI of between 29.3-30.5. *Id.* Jones notes that the CDC identifies any BMI of 30 or above as "obese" and that both asthma and obesity have been identified by the CDC as risk factors for developing serious complications from a Covid-19 infection. *Id.*

Jones argues that he is at greater risk of contracting the virus while incarcerated, given the difficulty of curbing the spread of infection in a correctional facility. *Id.* at 12.  He contends that the transfer of inmates from facility to facility additionally increases the risk of Covid-19 transmission, and states that the BOP is not sufficiently testing transferred inmates to prevent the spread of the virus between facilities. *Id.* Finally, Jones notes that Covid-19 is spreading rapidly

among inmates and guards at Fort Dix, and that 3 inmates and forty-two staff members are currently testing positive for the virus. *Id.; see also* Covid-19 Cases, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited March 30, 2021).

Jones additionally contends that his family circumstances constitute extraordinary and compelling circumstances. Jones's son, who has been diagnosed with autism, has been unable to attend school or special education classes because of the pandemic. *See* Def's. Mem. Doc. No. 1178-1 at 15. Accordingly, Service has had to adjust her work schedule; she currently works night-shifts and then spends the day helping their son attend special education classes remotely. *Id.; see also* Exhibit D. She notes that Jones has been a very involved parent and that before his incarceration, she relied on him for childcare. *Id.*

The government does not contest that Jones's underlying medical conditions constitute extraordinary and compelling circumstances warranting relief. *See* Govt's. Mem., Doc. No. 1181 at 5. However, the government maintains that the BOP is taking significant measures to prevent the spread of Covid-19 among inmates and argues that Jones has not established "any unreasonable deficiency" in the BOP's response to Covid-19 or that his underlying medical conditions cannot be properly treated at Fort Dix. *Id.* The government cites to the numerous steps the BOP has taken to respond to the Covid-19 crisis, including screening incoming inmates and staff and suspending most social, attorney and volunteer visits. *Id.* at 5. The government additionally contends that the BOP is in the best position to balance the safety of inmates at a particular facility with the risk posed to public safety by releasing those inmates. *Id.* Accordingly, the government maintains that it would be "imprudent" to discount the BOP's determination that release is not warranted in this case. *Id.*

Considering whether Jones has established extraordinary and compelling reasons supporting release, I note initially that Jones suffers from two chronic conditions that the CDC has specifically indicated may increase the risk of severe complications due to a Covid-19 infection. First, the CDC has noted that obesity, defined as a BMI of 30 or greater, puts an individual at any age at increased risk of severe illness from Covid-19. *See* CENTERS FOR DISEASE CONTROL, *People of Any Age with Underlying Medical Conditions* (June 25, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The CDC has additionally warned that asthma may increase the risk of severe illness from Covid-19. *Id.* Based on CDC guidance regarding underlying conditions, it is clear that Jones has established that he is currently at increased risk of developing severe illness were he to contract Covid-19, based on his BMI and history of asthma.

Additionally, the government's argument that the BOP has adequately managed the outbreak of Covid-19 among inmates at Fort Dix and that the risk of infection is comparable to the risk of infection in the greater community is unavailing. *See* Govt.'s Mem. Doc. No. 1181 at 7. Although the BOP has surely undertaken significant measures to control the spread of the virus among incarcerated individuals, it is undeniable that the risk of transmission of an airborne virus like of Covid-19 is much higher in prisons, based on difficulty of social distancing, limited access to hygienic products, constant turnover of correctional staff and inmates and limited access to healthcare. *See, e.g.,* Timothy Williams*, et al., Coronavirus Cases Rise Sharply in Prisons Even as They Plateau Nationwide* (June 16, 2020), (as of the date of publication "the five largest known clusters of the virus in the United States are…inside correction institutions"); Lisa B. Puglisi, et al., *Estimation of COVID-19 Basic Reproduction Ratio in a Large Urban jail in the United States*, Ann Epidemiol. 2021 Jan; 53: 103–105, doi:

10.1016/j.annepidem.2020.09.002 (incarcerated individuals are at higher risk for infection due to unsanitary living conditions and inability to socially distance). The high rates of Covid-19 infection among both state and federal inmates throughout the course of the pandemic unfortunately reflect the difficulty of controlling the spread of outbreak in correctional facilities. *See, e.g.,* THE MARSHALL PROJECT, "*I Begged Them To Let Me Die": How Federal Prisons Became Coronavirus Death Traps* (Jun. 18, 2020), https://www.themarshallproject.org/2020/06/18/i-begged-them-to-let-me-die-how-federal-prisons-became-coronavirus-death-traps.

I additionally cannot agree with the government's argument that because the BOP is well positioned to weigh the safety and health of inmates at a particular facility with public safety, it would be "imprudent to take the matter out of the hands of the BOP" and grant a motion for release following the BOP's denial or failure to act upon that motion. The very purpose of the First Step Act *was* to remove the BOP as the sole arbiter of motions for sentence reduction by permitting inmates to file motions directly. As the Second Circuit noted in interpreting the legislative history of that act, "[a]fter watching decades of the BOP Director's failure to bring any significant number of compassionate release motions before the courts, Congress allowed people seeking compassionate release to avoid BOP if BOP rejects their motions or fails to act on them." *Brooker*, 976 F. 3d at 236. Nothing in that statute directs a court reviewing a motion brought by a defendant to afford deference to the BOP's initial denial of a motion for sentence reduction.

Here, Jones's underlying medical conditions of obesity and asthma, coupled with the outbreak of the virus at Fort Dix and the risk he faces of contracting Covid-19, constitute extraordinary and compelling circumstances supporting sentence modification. His family

circumstances and the difficult burden Service faces as the sole caregiver of their special needs son during the pandemic additionally weigh in favor of release. I note that those circumstances may not be sufficient to warrant release absent his underlying medical conditions, given that they are unfortunately similar to those faced by many parents face during the Covid-19 pandemic. *See, e.g., United States v. Miller,* 2020 U.S. Dist. LEXIS 217614, at *8 (D. Conn. Nov. 20, 2020) (challenges faced by defendant's fiancé in balancing childcare and employment during the pandemic were insufficient, without more, to warrant release). However, coupled with Jones's medical conditions and the risk he faces of contracting Covid-19, the role he could play as caregiver to his son additionally supports sentence reduction.

### C. Section 3553(a) Factors

Even where a defendant establishes that extraordinary and compelling reasons support sentence reduction, a court reviewing a motion under section 3582(a) must additionally consider the sentencing factors set forth in section 3553(a). 18 U.S.C. § 3582. Accordingly, a court must examine "the nature and circumstances of the crime, the defendant's history and characteristics, and the multiple purposes of sentencing, such as providing just punishment, deterring crime, protecting the public from further crimes by the defendant, and providing the defendant with rehabilitation." *Miller*, 2020 U.S. Dist. LEXIS 217614, at *5; *see also* 18 U.S.C. § 3553(a). Although a court considering a motion by a defendant is no longer required to consider whether a defendant would pose a "danger to the community" as described by section 1B1.13, it is still required by section 3553(a) to "consider...the need to protect the public from further crimes of the defendant." *Vargas,* 2020 U.S. Dist. LEXIS 220531, at *26. Accordingly, a court must weigh both a defendant's "recidivism risk and potential threat to the community at large." *Id.*

Here, Jones contends that the section 3553(a) factors weigh in favor of release. Jones relies on my statements at the time of his sentencing, where I noted that both his employment record and his extensive family support suggested that he had a low risk of recidivism. *See* Def.'s Mem. Doc. No. 1178-1 at 17. He additionally points to the details of the underlying conspiracy to argue that his release would not pose a danger to public safety, noting that he played a very minor role in the drug-trafficking operation and that there were no allegations in the indictment that he engaged in any sort violent conduct. *Id.* Jones also submits that his plan upon release is to move in with Service and their children. *Id.* at 18. He maintains that he was fully compliant with the terms of pre-trial release while living at that address prior to sentencing, and accordingly argues that his release plan supports the conclusion that he has a low risk of recidivism. *Id.* Finally, Jones points to his exemplary disciplinary record while incarcerated and his participation in drug education to argue that he has made significant progress toward rehabilitation. *Id.* at 16.

The government concedes that Jones's criminal history prior to sentencing in the case at bar was not as serious as that of many of his codefendants, and states that it does not have "serious concerns" regarding release after weighing the section 3553(a) factors. *See* Govt.'s Mem. Doc. No. 1181 at 8. However, the government notes that Jones was on conditional release after a conviction in Connecticut Superior Court when he committed the offense in this case. The government additionally maintains that Jones's release plan is insufficiently detailed and does not adequately establish that he has plans to find legitimate employment and engage in substance abuse treatment if released. Accordingly, the government requests that Jones assemble a more detailed release plan, and that the four-year term of supervised release originally ordered be imposed. *Id.*

After considering the 3553(a) factors at the time of sentencing, I sentenced Jones to the mandatory minimum sentence. That decision reflected a number of factors, including Jones's relatively minor role in the conspiracy. I additionally noted that Jones had a supportive family and had emphasized the importance of being a present father to his son. Jones had also been steadily employed during the period of pretrial release prior to sentencing. Accordingly, I concluded that Jones had a low risk of recidivism. However, I also spoke with Jones at the sentencing hearing about my concerns regarding his history of substance abuse, and recommended that he take advantage of the BOP's Residential Drug Abuse Program (RDAP), and participate in vocational training with the goal of expanding his employment options and further reducing any risk of recidivism. *See* Trans. of Sent. H'rg. Doc. No. 849.

Those same considerations factor into my analysis of the section 3553(a) factors in the context of the motion for sentence reduction. First, I note that Jones has been discipline-free while incarcerated and was admitted into the RDAP program in October 2020.[1] *See* Def.'s Mot. Doc. No. 1178-1 at 16. That exemplary record and his efforts toward rehabilitation support the conclusion that he has a low risk of recidivism and therefore that his release does not pose a risk to public safety. The government's position with regard to the seriousness of Jones's criminal history and its analysis of the section 3553(a) factors weighs in favor of release. *See* Govt.'s Mot. Doc. No. 1181 at 8. Finally, with regard to the requirement that a court consider the need for a particular sentence to "provide the defendant with needed educational or vocational training" or medical care, it is clear that Jones is not able to take advantage of training programs or drug treatment at Fort Dix because of lockdowns required by the Covid-19 pandemic. *Id.* at 16.

---

[1] Jones reports that program has not been run continuously due to lockdowns imposed to prevent the spread of Covid-19 within Fort Dix. *Id.* at 16

With regard to the requirement that a sentence appropriately "reflect the seriousness of the offense" and "provide just punishment", Jones has served approximately 21 months of the 60-month sentence imposed. *See* Govt.'s Mem. Doc. No. 1181 at 2. I have previously denied motions for release where a defendant has served less than the majority of an imposed sentence. *See United States v. Cannon,* 2021 U.S. Dist. LEXIS 12807, at *18 (D. Conn. Jan. 22, 2021) (denying release where defendant had approximately half of sentence imposed); *see also United States v. Sturdivant*, 2020 U.S. Dist. LEXIS 218557, at *16 (D. Conn. Nov. 23, 2020) (granting release in part based on impending end of sentence). However, I have also considered the effect of harsh mandatory minimums in the context of motions for release. *See United States v. Clark,* 2021 U.S. Dist. LEXIS 9975, at *18 (D. Conn. Jan. 20, 2021). Here, Jones pled guilty to a charge with a five-year mandatory minimum sentence, so I was not free to consider whether a less lengthy sentence may have been appropriate. Given his history, characteristics and efforts toward rehabilitation, I find that a sentence of time served is appropriate in this case. I note that the harshness of incarceration during the pandemic as a result of necessary lockdowns and quarantines additionally factors into my analysis. *See, e.g., United States v. Rodriguez,* 2020 U.S. Dist. LEXIS 181004, at *7-8 (S.D.N.Y. Sept. 30, 2020) (noting that the pandemic has made incarceration "harsher and more punitive than would otherwise have been the case").

After weighing the section 3553(a) factors, I find that sentence modification is consistent with the overall goals of sentencing. The minimal role Jones played in the conspiracy, his disciplinary record while incarcerated, and his inability to access vocational training and consistent substance abuse treatment due to the Covid-19 pandemic all support release.

IV.     **Conclusion**

Jones has established that his underlying medical conditions, coupled with the risk of contracting Covid-19 while incarcerated at Fort Dix, constitute extraordinary and compelling reasons supporting release. After considering his disciplinary record while incarcerated, efforts toward rehabilitation and history, I conclude that release is also consistent with the sentencing goals enumerated in section 3553(a). Accordingly, Jones's motion [doc. no. 1178] is **granted**, and his sentence is reduced to time served.  Upon release, Jones shall commence serving his four-year term of supervised release consistent with the conditions I previously imposed. *See* Judgment, Doc. No. 754. As additional conditions, Jones must spend the first six months of his supervised release term on home confinement. He must also make arrangements to receive the Covid-19 vaccine. Jones must contact the United States Probation Office as soon as possible, but in no event later than 72 hours after his release.

Dated at Bridgeport, Connecticut, this 30th day of March 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge